FILED
2023 Dec-20 PM 01:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
DEC 20 2023
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Case No: |
| | ) 5:15-cr-00242-MHH-HNJ |
| **MARK ANTHONY BEDWELL,** | ) |
| | ) |
| **Defendant.** | ) |

## PLEA AGREEMENT

The Government and the defendant, **MARK ANTHONY BEDWELL**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to COUNT ONE of the Indictment filed in the above-numbered and -captioned matter; (ii) pay restitution as recommended by the Government; and (iii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to dismiss COUNTS TWO through FOUR at the time of sentencing and recommend the disposition specified below, subject to the conditions in section **VII**.

## TERMS OF THE AGREEMENT

**I.     MAXIMUM PUNISHMENT**

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Aggravated Sexual Abuse: Crossing a State Line with the Intent to Engage in a Sexual Act with a Child Under 12, in violation of Title 18, United States Code, Section 2241(c), as charged in COUNT ONE, is:

**A.**     Imprisonment for not less than 30 years and up to Life;

**B.**     A fine of not more than $250,000, or

**C.**     Both (a and b);

**D.**     Supervised release of no less than 5 years and up to Life; and

**E.**     Special Assessment Fee of $100 per count.

**II.     FACTUAL BASIS FOR PLEA**

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

### Background of the Investigation

A residence on Lakewood Dr. NW in Huntsville, Alabama, was identified as the service address for an Internet connection used to transmit child pornography. Charles Dunnavant was the registered subscriber to the Internet connection at that address. Alabama driver's license records, vehicle registration records, and physical surveillance conducted by the FBI, determined Dunnavant resided at the residence.

## Execution of Federal Search Warrant

On November 19, 2013, FBI agents executed a federal search warrant issued in the United States District Court for the Northern District of Alabama at the Lakewood Drive residence to search and seize evidence, fruits, and instrumentalities of violations of federal law regarding the production, possession, and distribution of child pornography. At the time the search warrant was executed, agents identified Carl Herold, and a minor child (nine years old) in his custody, as persons living at the address with Dunnavant. The minor child was identified as the victim in many of the pornographic images under investigation. Computers belonging to Dunnavant and Herold were seized and examined. They contained images and videos depicting child pornography of multiple victims, including the minor child in Herold's custody.

## First Interview of Charles Dunnavant

On November 19, 2013, Charles Dunnavant was interviewed at his place of employment. Dunnavant was advised that the interview concerned an investigation involving child pornography. Dunnavant told the interviewing agents that Carl Herold, and the minor child in his custody, lived with Dunnavant at his house on Lakewood Drive. Dunnavant also stated that Herold's friend from England, Mark Bedwell, had visited them in Huntsville twice since Herold and the minor child moved to Alabama with Dunnavant. Dunnavant was advised of his *Miranda* rights,

and he requested an attorney. The interview was terminated.

## First Forensic Interview of Minor Victim

On November 19, 2013, a child forensic interviewer conducted a videotaped interview of the minor victim that had been in Herold's custody. The victim was shown redacted images of child pornography in which he was believed to be depicted. The victim confirmed that he was the person depicted in the images, but he was reluctant to talk about what he called "the secret" because he was fearful that Herold would get in trouble.

## Subsequent Interviews of Charles Dunnavant

On November 20, 2013, Charles Dunnavant was interviewed by FBI agents in the presence of his attorney. Dunnavant confessed to sexual contact with the victim in Connecticut and again when the victim and Herold moved to Huntsville with him. When Mark Bedwell visited Dunnavant's home, Dunnavant did not directly observe Bedwell having sexual contact with the victim. However, Dunnavant concluded that Bedwell was having sexual contact with the victim because the victim asked Bedwell for "special tickles." Dunnavant, Herold and Bedwell used the term "special tickles" to mean masturbation, "cuddle" to mean sexual touching, and sexual activity with the victim in general was referred to as "private" or "the secret." Dunnavant also noticed that Bedwell and the victim frequently bathed together.

Defendant's Initials _MB_

Charles Dunnavant was interviewed again on July 8, 2015, with his lawyer present. Dunnavant advised that at the end of May 2013, on Bedwell's first visit to Alabama, Dunnavant walked in on Bedwell and the victim in the family room of Dunnavant's house. Bedwell was fully clothed lying on a bed and the victim was naked lying on top of Bedwell. Bedwell was masturbating the victim. Dunnavant advised that on Bedwell's second visit, they all went to Disney World. They traveled by car and arrived in Orlando, Florida, on October 11, 2013, and left driving back to Alabama on October 17, 2013. Dunnavant and Herold slept in one bed and Bedwell and the victim slept together in the other bed. Dunnavant advised that he did not see sexual contact between Bedwell and the victim while at Disney World but that they took baths together with the door shut.

### Search Warrant Served at Mark Bedwell's Home in England

On November 23, 2013, British authorities served a search warrant at Mark Bedwell's home. Computers, hard drives and other electronic devices were seized. A Disney World pass in the name of Mark Bedwell was also seized. Bedwell declined to be interviewed.

### Airline Records

Federal grand jury subpoenas were served on United Airlines and Delta Airlines for records of Mark Bedwell's travels to the United States. United Airlines records indicate that on May 22, 2013, Bedwell departed London Heathrow for

Washington Dulles. From Washington Dulles he flew to Huntsville, Alabama. On June 28, 2013, he departed Huntsville for Texas and then flew on to London Heathrow. Delta Airline records indicate that Bedwell flew on October 7, 2013, from Norwich in the United Kingdom to Amsterdam and then on to Detroit, Michigan, and finally to Huntsville, Alabama. He departed Huntsville on November 13, 2013, and went back through Amsterdam to Norwich.

## Subsequent Forensic Interviews of the Victim

On November 22, 2013, the victim was shown a video of Carl Herold giving the victim permission to tell authorities about "the secret." The victim had been reluctant to talk about "the secret" because he had been taught that if he disclosed "the secret," he would never see Carl Herold again. During the course of this forensic interview, and a second forensic interview conducted on September 24, 2014, the victim gave details of his sexual exploitation and the names of the people who sexually abused him. The victim said Bedwell, who he referred to as "Uncle Mark," had sexual contact (masturbation) with him in Herkimer, New York, and in Huntsville, Alabama. He also said that Bedwell masturbated him, and he masturbated Bedwell, in the hotel room at Disney World, where he celebrated his ninth birthday.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

*/s/ Mark Bedwell*
**MARK ANTHONY BEDWELL**

## III.   RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

   **A.**   That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

   **B.**   That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory

>   United States Sentencing Guideline range as calculated by the Court at the time of sentencing;
>
> C. That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions;
>
> D. That the defendant be required to pay restitution to the victim of the defendant's crime, if a claim for restitution is made;
>
> E. That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and
>
> F. That the defendant pay a special assessment of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, MARK ANTHONY BEDWELL, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

**B.     RIGHT TO APPEAL AND POST-CONVICTION RELIEF**

In consideration of the recommended disposition of this case, I, MARK ANTHONY BEDWELL, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose.  Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

      1.  Any sentence imposed in excess of the applicable statutory maximum sentence(s);

      2.  Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

      3.  Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their

application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, MARK ANTHONY BEDWELL, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

*/s/ Mark Bedwell*
**MARK ANTHONY BEDWELL**

## V. UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence

recommended by the Government is **NOT BINDING UPON THE COURT**, and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.  VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.  OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

Defendant's Initials /MB

## IX.    COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful.  Finally, the defendant expressly authorizes the United States Attorney's

Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending

or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIII. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 16 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand

that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here: _I AM TAKING NUMEROUS MEDICATION, BUT NONE OF THEM AFFECT MY JUDGMENT AT THIS TIME._

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

12-18-23
DATE

*/s/ Mark Bedwell*
**MARK ANTHONY BEDWELL**
Defendant

## XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

12-18-23
DATE

Bruce A. Gardner
Defendant's Counsel

## XV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

12.20.23
DATE

Mary Stuart Burrell
Assistant United States Attorney

12·20·23
DATE

John M. Hundscheid
Assistant United States Attorney